**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CREATIVE INFORMATION TECHNOLOGY, INC.,** | : | **CIVIL ACTION NO. 1:25-CV-1551** |
| | : | |
| | : | **(Judge Neary)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WELLSPAN HEALTH and TRIYAM, INC.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION**

When a party stipulates to an injunction against itself, it invites the court to cuff its hands. This case asks the court whether a settlement letting one defendant out of those cuffs forces the release of the other. After careful consideration, the court concludes such circumstances, without more, do not necessitate early release, and defendant WellSpan Health is restrained by the injunction: "until this lawsuit and the arbitration have been resolved [,]" as the parties stipulated. (Doc. 77 at 1).

As explained in detail below, the plaintiff's motion to release Triyam from the injunction (Doc. 79) will be granted with prejudice, as both arbitration and lawsuit are resolved as to this defendant. However, some claims persist against WellSpan, who has not carried its burden to show the change in circumstance makes the injunction's persistence inequitable. Therefore, the cuffs stay on, and WellSpan's motion to dissolve the injunction against it (Doc. 89) must be denied without prejudice. Finally, the court also takes the opportunity to consider CITI's motion to file a new amended complaint under seal, concludes CITI has not demonstrated a

seal in this matter is necessary, and so will deny that motion (Doc. 82), but will grant CITI leave to amend, to omit irrelevant information it does not wish to reach the public docket.

## I. Introduction

### a. Factual Background

The case revolves around WellSpan's use of one of CITI's products, the Data Retention and Interoperability Solution ("DRIS"). (Doc. 1 ¶¶ 16-17). DRIS is a unique medical database which CITI alleges also contains trade secrets about DRIS's own operation. (Id. at ¶¶ 17-25).

CITI licensed WellSpan to use DRIS in September 2016. (Doc. 1 ¶ 62). WellSpan accessed DRIS through an on-premises server deployed by CITI. (Doc. 1 ¶ 64). The license agreement permitted WellSpan access to DRIS and its data, but not the database's proprietary structure and design, and, among other restrictions, made clear the license was non-transferable and for internal use only. (Id. at ¶ 67, 71(b)).

In 2025, WellSpan began to move away from DRIS and towards using Triyam, Inc. for its database needs. (Doc. 1 ¶¶ 84-86). In June of 2025, CITI learned that as part of that migration, WellSpan had given Triyam employees access to DRIS. (Id. ¶¶ 90-93). That access, apparently given to 18 distinct Triyam users, went beyond what CITI believes necessary for the stated purpose of data archiving, and reached CITI's trade secrets about DRIS's design. (Id. ¶ 97-100). CITI avers the digital record shows Triyam employees exported information about the DRIS product itself, including information that could allow Triyam to replicate DRIS. (Id. ¶¶ 106-110).

CITI ultimately alleged misappropriation of trade secrets by both WellSpan and Triyam and breach of contract against WellSpan. (Id. ¶¶ 137-179).

**b. Procedural Background**

CITI initiated the action via complaint in August of 2025. (Doc. 1). CITI also moved for a preliminary injunction against the defendants, seeking to stop continued or repeated unauthorized access and stop the use of improperly obtained data. (Doc. 2). Before the court was able to rule on the preliminary injunction, WellSpan moved to compel arbitration pursuant to the contract between itself and CITI. (Doc. 39). The court denied the motion as the underlying contract permitted judicial action. (Doc. 57). CITI then filed an amended complaint. (Doc. 61). Alongside the amended complaint, CITI filed a new motion for preliminary injunction. (Doc. 62). Once again, the parties acted before the court could rule on the motion for preliminary injunction, and two weeks after the amended complaint was filed, all three parties entered into a far-reaching stipulation. (Docs. 76-77).

The parties stipulated to certain facts, agreeing Triyam had accessed DRIS and some of the proprietary information therein but that the access was not malicious, was part of a standard practice by Triyam, and was necessary to satisfy the goals of Triyam's contract with WellSpan. (Doc. 76). The parties also entered into a stipulated preliminary injunction ("SPI") against both defendants. (Doc. 77). The SPI required Triyam to delete certain data and cooperate with CITI in creating a new arrangement to do their work without improper access to DRIS. (Id. ¶¶ 1, 4, 6-10). The agreement also prohibited WellSpan from reinstating Triyam's access or

granting similar access to other actors. (Id. ¶¶ 2-3). Finally, the SPI made Triyam subject to the arbitration agreement in the contract between WellSpan and CITI. (Id. ¶ 11). The SPI's only limiting language is that it would remain in effect "until this lawsuit and arbitration have been resolved [.]" (Id. ¶ 3).

The court accepted the stipulation, entered the SPI, and awaited the results of the arbitration. (Doc. 78). About seven months later, the parties returned to court having made some progress. CITI and Triyam agreed to settle. (Doc. 79 at 1). The terms of settlement required CITI to abandon the trade secret claims against *all* parties, not just Triyam. (Docs. 86 at 3, 86-2 at ECF 4). CITI moved to modify the SPI to remove all conditions related to Triyam. (Doc. 79 at 1-2). CITI simultaneously moved to dismiss Triyam with prejudice (Doc. 80) and for leave to file a new amended complaint (Doc. 81), motions which the court granted (Doc. 85). CITI also moved to file the new complaint under seal (Doc. 82), and the court ordered briefing on that motion. (Doc. 85).

WellSpan opposed the motion to modify the SPI. (Doc. 88). WellSpan argued the arbitration agreement had changed the circumstances such that the SPI should be dissolved altogether, because the SPI dealt with trade secrets and there were no longer trade secret claims in this case, and that if CITI wished to hold WellSpan to an injunction, it must move for a new preliminary injunction and litigate for its imposition. (Id.). WellSpan also filed a motion to dissolve the preliminary injunction as applied to it, for similar reasons. (Doc. 89). The parties briefed the motion to file under seal. (Docs. 83, 87).

Those three motions are now ripe for resolution. As explained below, the court will grant the motion to modify the injunction as to Triyam only, deny WellSpan's motion to modify the injunction as to itself, and deny CITI's motion to file under seal.

## II. Standard of Review - Motion to Modify

A motion to modify a preliminary injunction "is meant only to relieve inequities that arise after the original order." Favia v. Indiana Uni. Of Pennsylvania, 7 F.3d 332, 338 (3d Cir. 1993). The "primary justification" for granting such a motion is to avoid "the injustice of requiring a defendant to continue complying with an injunctive order under circumstances that would have prevented its entry in the first place." Id. The Favia court explained "[m]odification of an injunction is proper only when there has been a change of circumstances between entry of the injunction and the filing of the motion that would render the continuance of the injunction in its original form inequitable." Id. at 337 (citing Merrell–Nat'l Lab., Inc. v. Zenith Lab., Inc., 579 F.2d 786, 791 (3d Cir. 1978)). Facts known to the parties and the court at the time of injunction do not constitute the kind of change in circumstances that would justify a motion to modify. Merrell, 579 F.2d at 791-92.

A motion to modify may come before the court pursuant to one of two rules of Federal civil procedure: Rule 59(e) or Rule 62(c). Rule 59(e) is a "motion to alter or amend a judgment," sometimes referred to as a "motion for reconsideration." FED. R. CIV. P. 59(e). This route is appropriate for cases where the moving party seeks "to relitigate the 'original issue.'" Ortho Pharmaceutical Corp. v. Amgen, Inc., 887 F.2d 460, 463 (3d Cir. 1989) (citing Smith v. Evans, 853 F.2d 155, 158-59 (3d Cir. 1988)).

A motion under Rule 62(c), in contrast, permits a court to consider if a change in circumstances merits adjustment to a prior injunction. Favia, 7 F.3d at 337 (citing Merrell, 579 F.2d at 781).

## III Discussion

Both injunction-related motions here are governed by Rule 62(c), as each movant argues changed circumstances merit the dissolution of the injunction as to a specific party. As explained below, the court concludes Triyam's circumstances have clearly changed and justify dissolution, but WellSpan's circumstances are not so substantially changed to merit dissolution of the injunction against it at this time.

### a. The Injunction Should be Dissolved as to Triyam.

CITI's motion (Doc. 79) asks the court to dissolve the portions of the injunction which apply to Triyam, on the grounds that all claims against Triyam have been settled.

It is difficult to imagine a more straightforward example of changed circumstances than these: all claims against the defendant have been voluntarily dismissed with prejudice. (Doc. 85). Dissolution in those circumstances not only makes practical sense, it comports with the precedent cited above: holding Triyam to the injunction when it is no longer a party to this action clearly presents "circumstances that would have prevented [the injunction's] entry in the first place." Favia, 7 F.3d at 338. Similarly, Triyam's exit from the case is clearly a change of circumstances, and holding it to the injunction under these new circumstances, where

it is no longer subject to litigation, would plainly be inequitable. See id. For all these reasons, the court will grant the motion and dissolve the SPI as applied to Triyam.[1]

### b. WellSpan Has Not Demonstrated Changed Circumstances Make the SPI Inequitable as Applied to it.

To begin, the court finds it highly significant that the injunction's only language regarding scope or expiration is "the parties shall preliminarily perform and refrain from performing the following until this lawsuit and the arbitration have been resolved [.]" (Doc. 77 at 1). This language is all but dispositive that the terms of the injunction relate to all claims in the lawsuit. To overcome this language, WellSpan would have to demonstrate a clear intention for the SPI to dissolve under the present circumstances or identify a change in circumstances that makes the present landscape one where the injunction would never have entered in the first place, or that make the injunction's persistence inequitable.

WellSpan's motion is premised on the idea that dismissal of the trade secret claims represents a sufficient change in circumstances to merit the total dissolution of the injunction. (Doc. 92). WellSpan cites precedential cases where injunctions were dissolved because the underlying reason for the injunction was no longer present. The

[1] In fairness to WellSpan, it does not argue Triyam should be held to the injunction. Rather, it argues granting the motion to modify as to only one defendant is improper. But WellSpan identifies no authority, and the court is aware of none, holding a modification to a preliminary injunction affecting one party necessarily requires modification to another party. Nor is any authority presented for WellSpan's theory that this request to modify amounts to backdooring a new preliminary injunction against it without proper argument. As to WellSpan's arguments that the same change in circumstances which freed Triyam from the SPI should also apply to WellSpan, those arguments are more at home in WellSpan's own motion to modify, and so are considered in that context only.

distinction between those cases and this one is that here, it is not clear from the record the underlying reason for the injunction has been eliminated.

WellSpan argues the dismissal of those claims "remove[s] the legal claims and alleged factual harm that apparently justified [the SPI]." (Doc. 92 at 6). Were this statement clearly supported by the record, WellSpan's argument would have real teeth. But the word "apparently" foreshadows the problem with this argument: because the injunction here was stipulated to, the court has limited insight into the justification behind it. In the normal course of events, the parties would have briefed the appropriateness of the injunction and the court would have articulated its reasons for imposing the injunction when granting it. Under those circumstances, a court faced with the present motion could go back and look at the justifications given by all those authors to divine the reasons which justified the injunction. But here the court can only judge the stipulation by what is within its four corners, and the text is silent as to the SPI's purpose or scope. This is a fatal stumbling block for WellSpan.

The court need not bury its head in the sand: it is apparent to any reader that the SPI relates to trade secrets. But the breach of contract alleged here is essentially that WellSpan breached the contract *by allowing a competitor to access trade secrets*. Had the alleged breach of contract been for some entirely unrelated act—say, failing to make timely payments—the court could perhaps conclude the SPI was only related to the trade secrets claim. But here, WellSpan is enjoined from taking essentially the same actions which CITI alleges breached the contract in the first place. That suggests the SPI also relates to the breach of contract claim.

WellSpan points to one possible source to shed light on the purpose of the injunction: CITI's amended motion for preliminary injunction. (Doc. 62). But asking the court to adopt those proffered justifications as relevant to the SPI assumes too much. It is not a given that the SPI had the same motivations and causes as a requested injunction in an undecided motion which was not fully briefed. While it stands to reason there is likely substantial overlap between the grounds offered in the motion and those backing the SPI, the court cannot assume they are the same, particularly where additional parties joined the stipulation. Where there are no other clues to determine the true motivations of all three parties in agreeing to the SPI, we must take the text at face value, and in that view the SPI appears relevant to the breach of contract.

Finally, WellSpan fails to argue in its filings that the circumstances have changed in a way to make the injunction "inequitable" in the current moment, except to say the elimination of the alleged predicate for the SPI (i.e., the dismissal of the trade secrets claims), makes continued enforcement inequitable. See Favia, 7 F.3d at 337. Given the court does not agree the predicate for the SPI has clearly been eliminated, this argument fails to demonstrate inequity.

For all these reasons, the court will deny WellSpan's motion to modify.

**c. CITI's Motion to File the Amended Complaint Under Seal Will be Denied.**

Finally, CITI has a motion pending to file an amended complaint under seal. (Doc. 82). CITI avers the seal is necessary because the complaint contains trade

secrets whose exposure would be harmful to its business interests. WellSpan opposes, vociferously defending the public right of access to the courts. (Doc. 87).

A contested motion to file under seal, which is essentially a request for a grant of confidentiality, is governed by the Third Circuit's test in Arnold v. Pennsylvania Dept. of Transp., 477 F.3d 105, 108 (3d Cir. 2007). In Arnold, the Third Circuit explained seven factors weighed in this balancing test:

> (1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

Arnold, 477 F.3d at 108 (citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787-88 (3d Cir. 1994)).

An initial glance at these factors quickly eliminates several from consideration in this matter. No party alleges embarrassment, public health and safety, the sharing of information among litigants, or public entities are relevant here, eliminating factors three through six from consideration.

The most relevant remaining factor here is the first, the interest in privacy of the party seeking protection. CITI argues certain facts in the complaint refer to trade secrets. (Doc. 83). But CITI's argument is quite generalized. CITI does not offer much specificity as to what secrets are risked by foregoing a seal and chose not to file a reply brief to WellSpan's motion to oppose, which offers very specific argument as to

each redacted fact and why it is not due a seal. (Docs. 71, 87, 87-1). Most of those arguments boil down to one or more of three points: the information sought to be protected refers to the existence of certain practices but does not reach application of those practices, the information describes CITI's product at such levels of generality that it does not risk exposure of any trade secret, or the same or similar information was already disclosed via the first unsealed complaint. (See e.g., Doc. 71 at 5-22). The court finds these arguments convincing and so concludes the first factor weighs towards denying the seal.

As to the second factor, whether the information sought has a legitimate purpose: CITI included these facts in their complaint, presumably in aid of obtaining relief, which weighs in favor of sealing. However, in the court's appraisal, the information which CITI seeks to protect is not essential to their claims—particularly now that the claims have narrowed to breach of contract alone. In sum, the second factor weighs very slightly in favor of sealing.

The seventh and final factor is the public's interest in the matter at hand. A contract between a healthcare provider and a data management service is likely not of great interest to the public. But the record of litigation involving WellSpan Health, a provider of an incredible number and variety of medical services to vast swathes of the public, likely has some inherent value to the public. Overall, this factor weighs slightly in favor of denying the seal.

The court concludes the relevant Arnold factors favor denying a seal. Simply put, CITI has not put forth sufficiently specific reasons showing their trade secrets

are meaningfully impugned by the information it seeks to protect here. However, because the court sees little connection between the allegedly confidential information and the breach of contract claim, and acknowledging CITI knows its own business best, the court concludes it is reasonable to permit CITI leave to revise the complaint, so it may omit any facts it considers too secret to risk exposing on the record.

In sum, the court will deny the motion to file under seal but permit CITI leave to file a third amended complaint.

## IV. Conclusion

When parties draft a stipulated agreement, they remove the court's judgment from the equation, relying on their own drafting to take its place. This makes the exact words and terms of the stipulation the ultimate authority in such matters. Here, whether by an oversight in drafting or a miscommunication between parties, the stipulated terms control in a manner apparently not anticipated by the defendant. This is certainly unfortunate for WellSpan, but where the plain terms of the stipulation appear to control the outcome, one party's insistence that the words on the page do not mean what they appear to say, without more, cannot win the day.

An appropriate order follows.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated: November 3, 2026